## Eastburn, Appellant, v. Eddleblute.

*Partnership—Sale of partnership assets—Consent by partner—Consideration—Contract.*

Where a partner who has not been active in the copartnership business, and has no knowledge of its affairs, is informed by one of the active partners that the business has not been profitable, although no money has been lost, and that the property of the firm is to be sold, and the non-active partner consents to the sale in consideration of a promise by the active partner to repay him his cash contribution to the partnership, such promise is based upon a sufficient consideration; and this is especially so where it appears that the non-active partner was not told the purchase price of the property, or how it was to be applied, but resting on the promise, made no inquiry as to the correctness of large credits allowed the active partners, and did not in any way interfere with the settlement of the partnership business.

Argued Oct. 30, 1912.    Appeal, No. 35, Oct. T., 1912, by plaintiff, from judgment of C. P. Clearfield Co., May T., 1911, No. 259, for defendant non obstante veredicto in case of Elmer Eastburn v. D. Frank Eddleblute.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.    Reversed.

Assumpsit on a promise to pay money.    Before A. O. SMITH, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict of $1,283 for plaintiff.    Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*William I. Swoope*, for appellant.—There was no consideration for defendant's promise: Keesey v. Miller, 19 Leg. York Rec. 119; Markel v. Wilbur, 200 Pa. 457; Brown v. Sloan, 6 Watts, 421; Fink v. Farmers' Bank, 178 Pa. 154; Gorman v. Bigler, 8 .Pa. Superior Ct. 440;

McCullough v. Barr, 145 Pa. 459; Downing v. Funk, 5 Rawle, 69; Dock v. Boyd, 93 Pa. 92; Hoffa v. Hoffa, 38 Pa. Superior Ct. 356; Mumma v. Mumma, 29 Lanc. Law Rev. 257; Johns v. Swoope, 4 Berks County, 243.

*Oscar Mitchell*, for appellee.

OPINION BY HEAD, J., April 21, 1913:

In his charge to the jury the learned trial court submitted to that body but a single question of fact, viz.: Did the defendant, at or about the time when he and some of his associates had negotiated a sale of the partnership property in which the plaintiff had an interest, promise that he would repay to the plaintiff the $1,000 which is the subject-matter of this suit? There can be no doubt under the evidence that the plaintiff had voluntarily agreed to contribute $2,000 to the capital of a partnership which was to open and operate a coal mine in Clearfield county. The defendant and three others were his co-partners and each went in on an equal basis. Whilst the plaintiff dealt apparently with the defendant and gave to him the two checks which represented his cash contribution and his note for the balance of it, all of the evidence shows that the cash at least went into the partnership. The plaintiff lived in Philadelphia. The business of the firm was in Clearfield county, Pennsylvania. It continued during a period of four years. The defendant and the other three members of the firm into which the plaintiff entered were more or less actively concerned, not only in the management and operation of the particular mine which was the subject of this partnership, but of other mines, stores, and business of that character. It was, of course, hoped that the opening of a new mine would be a profitable venture, but it apparently turned out to be a disappointment. The plaintiff was not consulted about and had no knowledge of the active operations of the firm. After its business had gone on for about four years, he was told by the defendant that the partnership property had

been sold, or was about to be sold; that the business had
not been profitable, but they had not lost any money.
Upon the assurance of the defendant that he, the de-
fendant, would repay him the $1,000 in cash which he
had invested and return the note for a like amount which
he had given, the plaintiff says he agreed to the sale of the
property. The defendant did later on return the note
but declined to pay the money and this suit followed.

The verdict of the jury has established that the defend-
ant made the promise on which the action is founded.
The learned trial judge, in entering judgment for the de-
fendant n. o. v., reached the conclusion there was no
legal consideration to support that promise. The cor-
rectness of that proposition is the only question before
us on this appeal.

There is no doubt the plaintiff invested his money in
the partnership capital. He does not allege that he was
induced so to do by any false or fraudulent representation.
If his money was lost because of the financial misfortunes
of the firm, that is no reason why he should attempt to
collect it from the defendant. But if, at the time the de-
fendant made the promise to repay him the money he had
invested, he had the obligations of a partner, he also had
the rights which are incidental to that relation. He was
not told the purchase price of the property nor how it
would be applied. He did not exercise his right as a part-
ner to inquire into the conditions of the sale that had
been made or the appropriation or disposition of the pur-
chase money. He was content to take the word of the
defendant that his money would be returned to him and he
was satisfied with that result.

The defense now is that although the defendant returned
to the plaintiff his note, the promise to repay him his
money investment was without consideration and there-
fore not enforceable. The defendant attaches to his
affidavit of defense a statement of how the purchase money
was applied. On its face it shows large items of credit
taken, into which the plaintiff would certainly have had a

right to inquire.   There are considerable sums of money there stated to have been paid to the other partners. It is said these were for advances made to the firm by those individuals.   It may be so.   But the plaintiff, relying on the promise of the defendant that he would be repaid his original investment, made no inquiry whatever as to the correctness of these large credits, nor did he interfere in any way with the business of the settlement of the partnership.   Under these circumstances, we cannot say, as a matter of law, that when he thus consented to the sale and agreed that his money should be refunded, the promise of his active copartner to repay that sum was without legal consideration.   It may have been important to the defendant in many ways that the business should be promptly closed up without any opposition from a partner who had never been consulted about incurring the debts which appear to have more than consumed the entire proceeds of the sale.   Many lines of action might have been open to the plaintiff, had he been given to understand that the capital which he had contributed was gone and no part of it could be recovered as the result of this sale.   On the other hand, it was easy to forestall any action he might have taken by the promise of the defendant that he would repay to the plaintiff the $1,000 which he had invested.   The jury has found he made such a promise. The whole of the evidence discloses that the plaintiff relied on it.   We do not think therefore the learned court below was warranted in declaring that there was no legal consideration to support the promise which the defendant made.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment for the plaintiff on the verdict unless other legal or equitable reason appear.